[Civ. No. 26017. Second Dist., Div. Three. Nov. 13, 1962.]

GEORGE W. ROLLINS, Plaintiff and Appellant, v. DE-
PARTMENT OF WATER AND POWER, CITY OF
LOS ANGELES, Defendant and Respondent.

Smith, Butts & Diekman, Ronald H. Bonaparte and Toxey H. Smith for Plaintiff and Appellant.

Crider, Tilson & Ruppé and Henry E. Kappler for Defendant and Respondent.

FORD, J.—The plaintiff was seriously injured when his left foot was caught between the wall of the elevator shaft and the floor of the elevator upon which he was riding while he was engaged in making a delivery of eggs to a cafeteria maintained by the Department of Water and Power of the City of Los Angeles. The appeal is from a judgment for the defendant.[1]

---

[1]While the notice of appeal also refers to the order denying the plaintiff's motion for a new trial, the attempted appeal from that order must be dismissed. (*Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907].)

The elevator was located between the defendant's two buildings. Each side of its floor was about 16 feet in length. On each of two opposite sides of the cage was an opening through which persons could enter or leave the elevator. While there was a gate across one of the openings, that at which the accident occurred had no gate or door as a barrier between the interior of the elevator and the side of the shaft. The plaintiff's contention was that his foot was caused to move into the intervening space because of a jerk of the elevator. The defendant's position was that the plaintiff's own negligent movements caused him to lose his balance. Pertinent testimony will be stated.

The plaintiff testified that he had been using the elevator in the delivery of eggs for about one and a half years. He entered the elevator in the basement. He stood with his back touching the wall and faced the elevator operator. He laid his hands on his hand truck upon which he had placed two half-cases of eggs. The hand truck had two wheels which were about 18 inches apart. The toe of his right shoe was on the axle and the heel was on the floor. His left foot was on the floor, "[p]robably a little behind the left wheel." The elevator jerked sharply and he was thrown off balance and his foot was caught. Another witness testified that there were no safety or danger lines marked on the floor of the elevator at the time of the accident.

Herbert W. Johnson, an elevator operator who was on the elevator at the time of the accident, testified that there was no jerk but that the plaintiff did lose his balance and his foot was caught between the elevator and the wall of the shaft. Before the accident the lip of the hand truck was resting on the floor and the truck was upright. At the time of the accident it was pushed away from the plaintiff at an angle.

Arnold W. Martin, another elevator operator, was also on the elevator on the occasion of the accident. Mr. Johnson was operating the elevator. The witness, who was going up to the roof for lunch, was standing about 3 feet behind Mr. Johnson. The elevator did not jerk. He testified that the plaintiff had his left foot on the left wheel of the hand truck. He further said: "I was talking to [the plaintiff] Mr. Rollins. Mr. Rollins in attempting to answer me raised his hands to make a gesture, whatever we were talking about. That is when he lost his balance of the little hand truck

and his foot moved the wheel which made the truck move and all this in the same motion. . . . I did not feel any unusual movement.''

The jury was instructed that the defendant ''was required by law to use the utmost care and diligence for the safe carriage of plaintiff, to provide everything necessary for that purpose and to exercise a reasonable degree of skill.'' It was also instructed as follows: ''The defendant . . ., however, was not an insurer of the safety of the plaintiff; that is to say, it did not warrant such safety in the sense of a guarantee. Its responsibility was not to use the most effective methods for safety that the human mind can imagine, nor that the best scientific skill might suggest. The care required of it, however, was the highest that reasonably could have been exercised consistently with the mode of transportation used, and the practical operation of its business as a carrier. *This requirement must be measured in the light of the best precautions which, at the time of the accident in question, were in common, practical use in the same business and had been proved to be efficacious.*'' (Emphasis added.) The plaintiff asserts that the last sentence (which is italicized herein) was prejudicially erroneous. He argues that the language used was inapplicable because there was no evidence in the record as to safety precautions used with respect to other elevators and also that it is a misstatement of the law in that there may be a situation ''where a simple, practical precaution might be necessary but would not constitute utmost care simply because it was not in common use.'' The extent to which doors or gates are used in the cages of elevators and the purpose served thereby are, of course, matters of common observation. While it is true that customary practice does not constitute the standard of required care, it does have evidentiary value in the course of reaching a determination of whether there has been compliance with the applicable standard in a particular case. (See *Sheward* v. *Virtue*, 20 Cal.2d 410, 413-415; [126 P.2d 345]; 10 Am.Jur., Carriers, § 1246, p. 170; Note 68 A.L.R. 1400, 1404.) The challenged portion of the instruction did not inform the jury that common practical usage and utmost care are identical. Rather, the thought conveyed was that in determining whether that care had been taken in the particular case, a factor to be considered was ''the best precautions which, at the time of the accident in question, were

in common practical use in the same business and had been proven to be efficacious.'' The purpose was to accentuate, rather than to delimit, the magnitude of the degree of care required under the applicable law, as is clear from the following language of the court in *Valente* v. *Sierra Ry. Co.*, 151 Cal. 534 [91 P. 481], at page 543 : ''The rule as stated in *Treadwell* v. *Whittier*, 80 Cal. 593, [22 P. 266, 13 Am.St.Rep. 175], cited by plaintiffs, is that such companies are bound to use the best precautions in *known* practical use. This does not mean that such use must, in fact, have been known to a particular defendant, but simply that it must have been such that it would have been known to any company exercising the utmost care and diligence in keeping abreast with modern improvement in the matter of such precautions. We can conceive of cases where a precaution may have been in practical use to such a limited extent that it would not have become known as an improvement to those exercising the utmost care and diligence in this behalf, and in such cases the instruction would be erroneous.'' The instruction was not erroneous (see *Price* v. *Atchison, T. & S. F. Ry. Co.*, 164 Cal.App.2d 400, 412 [330 P.2d 933]), but even if the language served no practical purpose from the standpoint of clarity in the statement of the applicable law in the light of the evidence in the present case, no miscarriage of justice is apparent because it cannot be said that it is reasonably probable that a result more favorable to the plaintiff would have been reached if the sentence had been omitted from the instruction given. (See *Korakakis* v. *Freeman*, 178 Cal.App.2d 331, 338 [2 Cal.Rptr. 802].)

The plaintiff contends that it was error to refuse to give an instruction requested by him which was in the following language: ''A person or a corporation operating elevators on which passengers are carried are to be treated as common carriers of passengers, and the same duties and responsibilities rest on them as to care and diligence as on the carriers of passengers by railway; though not guarantors of the absolute safety of passengers, they are required by law to use the utmost care and diligence for the safe carriage of a passenger, to provide everything necessary for that purpose and to exercise a reasonable degree of skill.'' But the contention is without merit because, as hereinabove noted, the court gave instructions embodying the pertinent law which was merely restated in the instruction refused. No more was required. (*Wood* v. *Alves Service*

*Transportation, Inc.,* 191 Cal.App.2d 723, 732-733 [13 Cal. Rptr. 114].)

 It is asserted that the trial court erred in giving on its own motion the instruction designated as BAJI 113 (California Jury Instructions, Civil), as modified by the court. It *is* argued that the language thereof conveyed to the jury the thought that the defendant's duty was only one of the exercise of ordinary care. Reference is made to the following language: ''The issues to be determined by you in this case are these: First: Was the defendant negligent or breached the duty owed to plaintiff as a passenger on its elevator? [*sic*]'' It is also argued that the instruction was misleading in its reference to negligence and contributory negligence because the duty of care imposed on the defendant differed from that to which the plaintiff was subject. While it is true that the defendant was held to a different standard of conduct than was the plaintiff, a breach by either party of the standard applicable to that party would constitute negligence. As said in *Finley* v. *City & County of San Francisco,* 115 Cal.App.2d 116 [251 P.2d 687], at page 120: ''Negligence, insofar as the conduct of a common carrier in its relationship to a passenger for hire is concerned, should be defined as any failure to exercise the utmost care and diligence for the safety of its passenger. (Civ. Code, § 2100.)'' The jurors were properly instructed as to the standard of care applicable to the defendant with respect to the elevator. At the request of both the plaintiff and the defendant the usual definitions of negligence and of ordinary care were also given to the jury. An instruction was given as to the matter of contributory negligence on the part of a claimant for damages. Consequently, it cannot be said that the jurors were misguided as to the applicable law by the giving of the challenged instruction. Unlike the situation in *Wilson* v. *City & County of San Francisco,* 174 Cal.App.2d 273 [344 P.2d 828], cited by the plaintiff, the instructions were not of such a nature as ''to inform the jury that in determining negligence and contributory negligence they must apply the same standard of care.'' (174 Cal.App. 2d at p. 276.) The instructions in the present case did not equate the two standards of care and did not tend to lead the jury to apply the same standard to both the defendant and the plaintiff. While reasoning of the nature expressed by the plaintiff on this appeal might be of concern to a trial judge in forming a judgment as to whether the use of the challenged

instruction in a case of this nature would be of aid to a jury, no prejudice giving rise to a miscarriage of justice is evident from the record.

 It was the contention of the plaintiff that the elevator jerked and that such jerk caused his foot to become wedged between the floor of the elevator and the side of the elevator shaft. Immediately preceding an instruction which explained to the jury the nature and effect of the inference which arises from the happening of an accident in a case where the doctrine of res ipsa loquitur is applicable, the trial court on its own motion instructed the jury as follows: "One of the questions for you to decide in this case is whether the accident involved occurred under the following circumstances: First, that it is the kind of accident which ordinarily does not occur in the absence of someone's negligence; Second, that it was caused by an agency or instrumentality in the exclusive control of the defendant, and Third, that the accident was not due to any voluntary action or contribution on the part of the plaintiff. If, and only in the event that you should find that the accident occurred as claimed by plaintiff *and was not due to any voluntary action or contribution on the part of plaintiff,* you are instructed as follows:" (Emphasis added.)

The plaintiff asserts that the italicized language of the instruction just quoted was misleading because "it has no application in an elevator case where the elevator was operated" by the defendant and not by the plaintiff. The concept involved in the use of such language is clearly set forth in *Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436 [247 P.2d 344], at page 444, as follows: "Some cases have stated that the accident must not have been due to any voluntary action or contribution on the part of the plaintiff. (See *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Raber* v. *Tumin,* 36 Cal.2d 654, 659 [226 P.2d 574]; *Cavero* v. *Franklin etc. Ben.v. Soc.,* 36 Cal.2d 301, 309 [223 P.2d 471]; *Druzanich* v. *Criley,* 19 Cal.2d 439, 444 [122 P.2d 53]; 9 Wigmore on Evidence [3d ed., 1940], § 2509.) This is allied to the condition of control by the defendant and has also been employed as a means of showing that the defendant, rather than the plaintiff, had control and was responsible for the injury. (See *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 458 [150 P.2d 436].) It should not be confused with the problem of contributory negligence, as to which defendant has the burden of proof, and its purpose, like

that of control by the defendant, is merely to assist the court in determining whether it is more probable than not that the defendant was responsible for the accident. ▆▆ As recently held by the Supreme Court of Oregon in a well reasoned opinion, a plaintiff may properly rely upon res ipsa loquitur even though he has participated in the events leading to the accident if the evidence excludes his conduct as the responsible cause. (*Gow* v. *Multnomah Hotel*, 191 Ore. 45 [224 P.2d 552, 555-560, 228 P.2d 791].)'' (See also *Gillespie* v. *Chevy Chase Golf Club*, 187 Cal.App.2d 52, 54-55 [9 Cal.Rptr. 437]; Prosser on Torts (2d ed. 1955) § 42, p. 208; 2 Harper & James, The Law of Torts, § 19.8; Note 169 A.L.R. 953, 966; Note 56 A.L.R.2d 1059, 1089.)

▆▆▆ In harmony with the *Zentz* case it was said in *Hendershott* v. *Macy's*, 158 Cal.App.2d 324 [322 P.2d 596], at page 328: ''It should be pointed out that the third condition should not be confused with contributory negligence. It refers to the question of control and means that the doctrine will not apply if the plaintiff had control of the instrumentality. [Citation.] The doctrine may apply and yet the plaintiff be unable to recover because of contributory negligence.'' ▆▆▆ In view of the nature of the evidence on which the plaintiff predicated his reliance upon the doctrine of res ipsa loquitur, there was no justification for the repetition, in the words italicized, of the third condition which a jury must find to exist as a prerequisite to the application of that doctrine. But we cannot hold that the jury was misled since the repetitious words were preceded by the following language: ''If and only in the event that you should find that the accident occurred as claimed by plaintiff . . . .'' If the jurors had believed that the elevator jerked as related in the plaintiff's version of the accident, under the evidence it would have been clear to them that the plaintiff's loss of balance and the consequent insertion of his foot between the elevator floor and the wall of the shaft were not due to any voluntary action or contribution on his part. ▆▆▆ Since it cannot be said that the instruction misled the jurors, a reversal of the judgment is not warranted. (See *Smith* v. *Sugich Co.*, 179 Cal.App.2d 299, 311 [3 Cal.Rptr. 718].) ▆▆▆ Moreover, while counsel for the defendant appears to have misinterpreted the meaning of the third condition in the course of his argument to the jury, the plaintiff is not in a position to complain since he made no timely objection to that portion of the argument and failed to request

the court to instruct the jury to disregard it. (See *Sepulveda* v. *Ishimaru,* 149 Cal.App.2d 543, 548 [308 P.2d 809].)

The plaintiff asserts that it was error to refuse an instruction on the doctrine of res ipsa loquitur offered by him, part of which was as follows: "If, and only in the event, you should find that there was an accidental occurrence as claimed by the plaintiff, namely: That the elevator jerked causing plaintiff to lose his balance and his foot to become wedged between the elevator platform and the side of the elevator shaft; and if you should find that from that accidental event, as a proximate result thereof, plaintiff has suffered injury, you are instructed as follows: . . . ." It is argued that the instruction should have been given because it "presents no confusion in the jury's mind between the application of the doctrine . . . and possible contributory negligence on the part of the plaintiff." But since the jury was sufficiently instructed with respect to the doctrine of res ipsa loquitur, as has been noted, there was no error in refusing the proffered instruction. "It is axiomatic that so long as the jury is correctly instructed a party cannot complain that the instructions were not couched in particular language." (*Pappas* v. *Bogard,* 167 Cal.App.2d 599, 603 [334 P.2d 947].)

While there was testimony that a gate or door over the opening at the point where the accident occurred would have enhanced the safety of those using the elevator for the purpose of transportation, it cannot be said that the absence of such a door constituted negligence as a matter of law. (Cf. *Guerra* v. *Handlery Hotels, Inc.,* 53 Cal.2d 266, 269 [1 Cal.Rptr. 330, 347 P.2d 674].) The absence of a warning line on the floor to indicate to passengers that they should stand away from the opening is in the same category. Moreover, an inference of negligence was not compelled by the fact that the employees of the defendant who were on the elevator failed to tell the plaintiff to move to another position in the elevator. But even if the defendant should have anticipated danger that a passenger might in some way get some part of his person outside the elevator while it was in motion and should have taken steps to prevent such an occurrence, and thus failed to comply with the duty of care placed upon it by law, still the evidence was sufficient to support a determination that the plaintiff could not recover because of his contributory negligence. He had made use of that elevator for a period

of over a year. The unguarded opening must have been apparent to him. If the jury believed the testimony of Mr. Johnson and Mr. Martin heretofore related, as it appears to have done, it was a fair inference therefrom that the plaintiff, standing in a place close to the opening, should have realized that the position of his body with respect to the hand truck was such that the truck might slip and cause him to be thrown off balance if he removed his arms from its handle, and that a part of his body might thereby be caused to enter that unguarded opening. ▮ This court is not free to interfere with a factual determination adverse to the plaintiff which has substantial support in the evidence. (See *Parker* v. *Manchester Hotel Co.*, 29 Cal.App.2d 446, 454-456 [85 P.2d 152]; *United States* v. *Trubow*, 214 F.2d 192, 195.)

The attempted appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

A petition for a rehearing was denied December 7, 1962, and appellant's petition for a hearing by the Supreme Court was denied January 8, 1963.